UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| FULTON COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civil No. 08-cv-00458-LA |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **PLAINTIFF'S CIVIL L. R. 7(H) EXPEDITED, NON-DISPOSITIVE MOTION TO CORRECT ITS PROPOSED AMENDED** |
| MGIC INVESTMENT CORPORATION, CURT S. CULVER, LARRY PIERZCHALSKI, J. MICHAEL LAUER, BRUCE WILLIAMS AND JOHN DRAGHI, | ) ) ) ) ) ) | **CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES LAWS** |
| Defendants. | ) | |

Pursuant to Civil L. R. 7(h), Lead Plaintiff Fulton County Employees' Retirement System ("Plaintiff") respectfully moves for leave to correct its proposed Amended Consolidated Class Action Complaint for Violations of the Securities Laws (the "Amended Complaint"), filed on March 18, 2010 (Docket Entry 75-1).

Defendants in this action have filed two different versions of the transcript of MGIC Investment Corporation's ("MGIC") earnings conference call for the first quarter of 2007, which occurred on April 12, 2007. On August 14, 2009, Defendants Bruce Williams ("Williams") and John Draghi ("Draghi") submitted a Bloomberg L. P.[1] transcript of the earnings call. (Docket Entry 58-5). Also on August 14, 2009, Defendants MGIC, Curt S. Culver ("Culver"), J. Michael Lauer ("Lauer") and Larry Pierzchalski submitted a Thomson Reuters transcript of the same call. (Docket Entry 62-9). There are discrepancies between the two transcripts in that, at points, the two transcripts attribute statements to different speakers. (*See* Docket Entries 58-5 and 62-9).

In drafting the proposed Amended Complaint, Plaintiff relied on the Bloomberg transcript filed as Docket Entry 58-5, which Plaintiff attached to the proposed Amended Complaint as Exhibit A. (Docket Entry 75-2). That transcript attributed the following colloquy concerning C-BASS's portfolio losses to Culver and an analyst:

> **Analyst:** First question I have is on C-BASS. You mentioned the loan portfolio was $2.3 billion and I'm just looking at the presentation you guys gave for the rating conference call in November. And on that, you had a breakout as of September 30, 2006, the amount of paper of the securities you had in the balance sheet, the – and 90% of that was BB rated or lower, 45% of it was unrated residuals, BBB was 16% and I'm just trying to get my arms around the markdown you put on that. It seems like $75 million on a $2.3 billion loan portfolio, the bulk of which is lower end residuals. It just doesn't seem to make any sense given what the markets – can you just give me some color on why it's so low?
> **Culver**: I don't think it's so low. It's $100 million.
> **Analyst**: But I mean the BBB paper is down 30% from – for the year-to-date.

---

[1] Bloomberg L.P. ("Bloomberg") and Thomson Reuters ("Thomson") are both highly reputable companies that, among other things, offer transcripts of companies' earnings conference calls.

> **Culver**: I will give you the – let me give you the categorizations. As I said, the securities portfolio is 2.3 billion. The BBB part of that portfolio is 18%. The single A, AA, and AAA bucket is 4.5%, the BB is 30%, the B is 3.1%, and unrated is 44.5%.
> **Analyst**: So it's about the same as it was?
> **Culver**: Yes, it is about the same, and again as I said, we priced $3 billion worth of issuance. We have a very good standard in terms of the spreads we executed at in terms of our BBB portfolio. So we are marking it based on where it clears the market. We are not – we are not a generic issuer. We are pricing and trading well inside of that due to the franchise value that people associate with how we look at our credit and how our credit has performed.

(*See* Docket Entry 58-5 at 15). By contrast, the Thomson transcript attributes this colloquy to Williams. (*See* Docket Entry 62-9 at 24).

On March 25, 2010, counsel for MGIC sent Lead Plaintiff's counsel a CD and represented that the CD contained the actual audio recording of the April 12, 2007 earnings conference call. Having reviewed the audio recording, it appears that Williams indeed made the statements in the above quoted passage. For this reason, Lead Plaintiff moves to correct paragraphs 83 and 174 of the proposed Amended Complaint to attribute this passage to Williams.[2] If the Court grants Lead Plaintiff's motion to file an Amended Complaint, Lead Plaintiff asks that the Court grant it permission to file a corrected Amended Complaint reflecting these changes in lieu of the Amended Complaint attached to its motion to amend.[3]

---

[2] Lead Plaintiff also moves for permission to correct paragraphs 88 and 176 of the proposed Amended Complaint. These paragraphs contain an allegation regarding a representation at MGIC's 1Q07 Earnings Call that no "big write-offs" at C-BASS were expected. The Bloomberg transcript attributes this representation to Culver. (Docket Entry 58-5 at 13). The Thomson transcript attributes this representation to Lauer. (Docket Entry 62-9 at 19). Having reviewed the audio CD supplied by MGIC, it appears that Williams actually made this representation and Lead Plaintiff seeks permission to correct these paragraphs accordingly.

[3] In its March 25, 2010 letter, MGIC suggested that Lead Plaintiff's reliance on the Bloomberg transcript was somehow sanctionable. For the reasons set forth in this motion, this contention is frivolous. In drafting the Amended Complaint, Lead Plaintiff relied on a transcript from a reputable news service that had been submitted to this Court, without objection, by Defendants Williams and Draghi. Now that MGIC has brought the transcript discrepancies to Lead Plaintiff's attention and provided an audio CD, Lead Plaintiff has moved to correct its proposed Amended Complaint.

The correction to paragraphs 83 and 174 strengthen Lead Plaintiff's contention that Williams was aware of the severe deterioration in C-BASS's financial status linked to its massive investment in low-grade subprime securities but misleadingly denied the extent of this deterioration while Defendants sought to sell part of C-BASS to an outside buyer. *See* Docket Entry 76 at 10-14, 18, 21 and 24-25. In the above quoted colloquy, Williams denied that C-BASS has seen significant financial deterioration in the face of an analyst question aimed directly at the issue of C-BASS's investment in low-grade subprime securities and falsely represented that C-BASS's $2.3 billion subprime portfolio only required a tiny write-down. *See supra* pp. 1-2. And despite the fact that the general subprime market was down approximately 30 percent for the year, Williams falsely assured that C-BASS's "franchise value" and credit practices allowed it to garner higher prices for its securities than other subprime players. *Id.*

These statements stand in stark contrast to the facts that Williams knew. As C-BASS's CEO, Williams received monthly portfolio valuation reports that showed rapid declines in value and "extreme risk" as early as the third quarter of 2006. (Docket Entry 75-1 ¶¶156-59). Thus, from the beginning of the Class Period, Williams was aware of C-BASS's dire state and the fact that C-BASS was "valuing the portfolio higher than it was." *Id.* ¶158. Thus, there is no question that Williams' statements were false and made with intent to deceive the public about C-BASS's, and therefore MGIC's, financial well-being. As set forth in Lead Plaintiff's memorandum of law in support of its motion to file the Amended Complaint, Culver, Lauer and MGIC are liable for Williams' false statements because they controlled Williams and because Williams made his false statements at MGIC earnings calls in the presence of Culver and Lauer and on behalf of MGIC. (*See* Docket Entry 76 at 25-30).

3

Dated: April 2, 2010

Respectfully submitted,

SCOTT+SCOTT LLP

/s/ Beth Kaswan
Beth Kaswan
Thomas Laughlin
500 Fifth Avenue, 40th Floor
New York, NY 10017
Tel: 212/223-6444
Fax: 212/223-6334
Email: bkaswan@scott-scott.com
tlaughlin@scott-scott.com

SCOTT+SCOTT LLP
Arthur L. Shingler III
600 B Street, Suite 1500
San Diego, CA 92101
Tel: 619/233-4565
Fax: 619/233-0508
Email: ashingler@scott-scott.com
 -and-
Geoffrey M. Johnson
12434 Cedar Road
Cleveland Heights, OH 44106
Tel: 216/229-6088
Fax: 216/229-6092
Email: gjohnson@scott-scott.com

PREVIANT, GOLDBERG, UELMEN,
GRATZ, MILLER & BRUEGGEMAN, S.C.
Jason R. Oldenburg
1555 North RiverCenter Drive, Suite 202
P.O. Box 12993
Milwaukee, WI 53212
Telephone: 414-271-4500 or 800-841-5232
Facsimile: 414-271-6308

*Attorneys for Plaintiff Fulton County
Employees' Retirement System*